UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER R.,[1] | ) |
| | ) No. 21 CV 500 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) August 7, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Christopher R. seeks disability insurance benefits ("DIB"), claiming he is disabled by various medical conditions after falling from scaffolding on a construction site. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for DIB. Before the court are cross motions for summary judgment. For the following reasons, Christopher's motion is denied, and the government's is granted:

**Background**

Christopher filed a DIB application in March 2019, alleging disability onset beginning in November 2018. (Administrative Record ("A.R.") 18.) At the administrative level, his application was denied initially and upon reconsideration. (Id.) Christopher appeared with his attorney telephonically at an August 2020

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect his privacy to the extent possible.

hearing, during which he and a vocational expert ("VE") testified. (Id. at 18, 36.) The administrative law judge ("ALJ") presiding over the matter ruled in November 2020 that Christopher was not disabled. (Id. at 37.) The Appeals Council denied Christopher's request for review, (id. at 1), making the ALJ's ruling the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Christopher then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 7).

## Analysis

Christopher argues that the ALJ improperly evaluated his subjective symptoms and failed to accommodate his physical and mental limitations when defining his residual functional capacity ("RFC"). (R. 14, Pl.'s Br. at 5.) The court's function is to assess only whether the ALJ applied the correct legal standards and the final decision has the support of substantial evidence, *see Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels it." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). But the ALJ must "provide a 'logical bridge' between the evidence and his conclusions," *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021), providing enough detail "to enable a review of whether the ALJ considered the totality of a

2

claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the record, the court finds no error in the ALJ's analysis warranting a remand.

A.  **Symptom Assessment**

Christopher complains that the ALJ "offered skewed versions of the facts and drew improper inferences to undermine" his symptom complaints. (R. 14, Pl.'s Br. at 5.) More specifically, he claims that the ALJ: (1) failed to meaningfully analyze his symptoms before finding them inconsistent with the medical evidence; (2) improperly discounted his pain symptoms; (3) placed too much weight on how far he fell from scaffolding; and (4) inadequately analyzed his mental health issues. When assessing a claimant's subjective reports, an ALJ considers objective medical evidence, daily activities, frequency and intensity of symptoms, medications, and treatment to relieve pain or other symptoms, and functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation generally is entitled to great deference because the ALJ observed the claimant's credibility firsthand. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb a symptom evaluation if it is based on specific findings and evidence and not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

3

The court rejects Christopher's first argument because the ALJ spent considerable effort discussing Christopher's medical history as compared with his subjective symptom statements. (See A.R. 27-32.) Specifically, she discussed his workplace accident, the resulting time and treatment in the emergency room, his daily activities, his chronic pain and related medication regimen, his headaches, the x-rays, and MRIs taken throughout his course of care, and his symptoms of and treatment for depression, anxiety, and PTSD. (See id.) In doing so, the ALJ sufficiently explained her reasoning. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Nor did the ALJ improperly discount Christopher's complaints of shoulder, facial nerve, and head pain. (R. 14, Pl.'s Br. at 7.) Where the medical record does not support a claimant's assertions of pain, and where "pain is a significant factor" of the claimant's inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its impact. *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000). If the ALJ still finds the subjective statements inconsistent with the record, the ALJ must "explain why the objective medical evidence does not support [the claimant's] complaints of disabling pain." *See id.* at 872. During the administrative hearing, the ALJ asked Christopher about his daily activities and learned that he washes dishes and dusts with "some difficulty," which he clarified meant with some pain. (A.R. 52-53.) He takes out the garbage but takes care not to overload the bags, as he "can't pick things up at a certain weight especially and fling [them]," (id. at 53), and he uses a

4

push lawnmower to care for the lawn, (id. at 54). His fiancé, with whom he lives, performs most of the childcare work. (Id. at 56.) And his hobbies include watching television, taking walks, and talking to his fiancé and child. (Id. at 213.) The ALJ explored Christopher's daily activities and their effect on his pain in her opinion. (Id. at 28-29.) The inquiry thus becomes whether the ALJ adequately "explain[ed] why the objective medical evidence does not support" the pain complaints, *see Clifford*, 227 F.3d at 871-72. For the reasons that follow, the court finds that the ALJ met her burden.

Christopher testified that the facial injuries he suffered from the impact of his fall caused "pain and nerve damage in the face" and neck. (A.R. 50.) But the ALJ found that the medical record lacked evidence of facial nerve damage warranting additional limitations in his RFC. (Id. at 29.) While medical records document Christopher's facial injuries, (see, e.g., id. at 277, 442, 1213, 1215, 1254, 1263-64), the ALJ is correct that no records indicate any limitations Christopher requires in light of these injuries or suggest his pain is so extreme that working through it would be impossible or even difficult, (see id.; see also id. at 1250 (September 2019 treatment record noting that Christopher's right facial pain had decreased)). And although pointing to a lack of supporting medical evidence is generally insufficient to wholly discount pain, *see Clifford*, 227 F.3d at 871-72, any error is harmless because Christopher failed to demonstrate that his claimed facial pain requires further restrictions, *Gedatus*, 994 F.3d at 905 ("[Plaintiff] bears the burden to prove she is disabled by producing medical evidence.").

5

Similarly, Christopher testified that he has 20 to 25 migraines a month and that half of them are so severe that he must lie down all day. (A.R. 57.) He has never sought emergent care for his migraines but testified that four to five years ago he had them treated with Botox injections, nerve blocks, and acupuncture.[2] (Id. at 57.) The only treatment records noting Christopher's migraines—besides his own reports, (see id. at 57, 228, 246-47)—are: a record from his pain specialist indicating a decrease in his headaches, (id. at 1256); notes from the consultative examiners ("CEs") documenting his headaches, (id. at 85, 92); and a statement from his orthopedist that Christopher "denies frequent headaches," (id. at 1316). In the absence of medical source opinions or records supporting his claims, Christopher fails to demonstrate that his facial pain or headaches require limitations beyond those the ALJ imposed. *Gedatus*, 994 F.3d at 905; *Olsen v. Colvin*, 551 Fed. Appx. 868, 875 (7th Cir. 2014).

As for Christopher's complaints of shoulder pain, the ALJ found that MRI findings did not support them. (A.R. 31.) Specifically, she noted that while treating orthopedist Dr. Robert Thorsness "opined that the pain symptoms are a result of cervical radiculopathy," he also noted that the shoulder MRI was "'fairly unremarkable for any acute pathology that would cause him the significant amount of pain that [he] is in.'" (Id. (citing id. at 1327).) Christopher argues that the ALJ misinterpreted Dr. Thorsness's notes, (R. 14, Pl.'s Br. at 7), and the court agrees that Dr. Thorsness did not opine that Christopher's pain was not severe or

---

[2] Evidence of this treatment is not reflected in the record.

6

supported by testing. Rather, for his pain resulting from cervical radiculopathy, Dr. Thorsness recommended that Christopher consult with other doctors to consider "surgical management of the spine" and possible cervical spine injections. (A.R. 1170.)

That said, an error is harmless if a court can conclude "'with great confidence' that the ALJ would reach the same decision on remand." *Weaver v. Berryhill*, 746 Fed. Appx. 574, 578 (7th Cir. 2018) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). Given the improvement in Christopher's shoulder pain, the ALJ likely would have come to the same conclusion even if she had interpreted the MRI findings correctly. Indeed, Christopher eventually received a "Right C2, C3, C4, and C5 Medial Branch Block" in September 2019, which he reported reduced his pain by 80 to 90%. (A.R. 1282.) The same notes indicate that his functionality improved and his quality of life "improved moderately." (Id.) The ALJ appropriately referenced this treatment and resulting improvement in her opinion, when assessing symptom complaints. (See id. at 31); *see also* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). As such, any error here is harmless because Christopher's shoulder pain ultimately was treated and improved, which undermines his testimony. Because the outcome is not "patently wrong," reversal is not required on this front. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (citing *Deborah M.*, 994 F.3d at 879).

Christopher also complains that the ALJ placed too much emphasis on the discrepancy concerning how far he fell from scaffolding when he suffered his

7

injuries. (R. 14, Pl.'s Br. at 8 (citing A.R. 29).) While Christopher testified that he fell 32 feet from scaffolding, (A.R. 62), some emergency room records state that he fell just 15 feet, (see, e.g., id. at 426, 475). The court agrees with the government that the "ALJ was entitled to acknowledge this inconsistency in the record, and contrary to Christopher's assertion, . . . never suggested that a 15-foot fall would be 'insignificant.'" (R. 20, Govt.'s Mem. at 14-15.) Although it concerns this court that the ALJ raised this detail while assessing Christopher's testimony, the court takes comfort in the fact that the ALJ included several limitations in his RFC, suggesting that she did not place excessive weight on the inconsistency generally. Further, here too, Christopher fails to explain how the outcome would have been different had the ALJ adopted his assertion that he fell 32 feet and not 15.

Christopher's final symptom-assessment complaint concerns the ALJ's analysis of his mental health symptoms. Specifically, he complains that the ALJ wrongfully relied on his delay in seeking treatment for his mental health disorders and relied too heavily on mental status examinations at pain management visits. (R. 14, Pl.'s Br. at 13-14.) The ALJ noted that although the record demonstrates Christopher suffered from anxiety and depression, he did not seek treatment for it until December 2019. (A.R. 32.) In this circuit an ALJ may consider a failure to seek medical treatment in assessing a claimant's credibility, *see Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005), but a negative inference may be drawn only after the ALJ examines the reasoning behind the lack of treatment and is left

8

with "no good explanation," *Alesis v. Astrue*, 789 F. Supp. 921, 934 (N.D. Ill. May 24, 2011) (citing SSR 96-7p, 1996 WL 374186, at *7).

It is true that Christopher waited over a year to seek mental health treatment after sustaining his injuries, and while receiving psychiatric treatment he refused psychotherapy. (A.R. 1309-11.) But in relying on this delay, the ALJ failed to explore why he made these choices. Nevertheless, this error is also harmless because the court is confident that the same decision would be reached on remand for two reasons. *See Weaver*, 746 Fed. Appx. at 578 (citing *McKinzey*, 641 F.3d at 892). First, the ALJ ultimately accommodated Christopher's mental health impairments by limiting him to "no more than simple routine tasks, performing the same tasks day in and day out with no public contact and no more than occasional contact with coworkers and supervisors" to avoid subjecting him to stress, in accordance with the recommendation of the non-examining state-agency consultant. (A.R. 33.) Christopher fails to explain why this accommodation is insufficient. *See Gedatus*, 994 F.3d at 905.

Second, although Christopher demonstrated adverse mental health symptoms (e.g., feelings of hopelessness and worthlessness, depression, and anxiety)—evidence the ALJ acknowledged—his mental impairments did not deteriorate to the point that he required additional medication or more aggressive treatment. *See, e.g., Chambers v. Saul*, 861 Fed. Appx. 95, 101 (7th Cir. 2021) (finding the plaintiff's stable mental health condition compelling). To be sure, treating psychiatrist Dr. Bindu Gandhiraj never increased Christopher's Paxil

9

dosage but rather changed the prescription to Hydroxyzine to resolve side effects. (A.R. 1307-08.) Further, the record indicates that Christopher's mood and mental status were normal. (See, e.g., id. at 1203, 1216, 1221, 1237, 1257.) Because the outcome is not patently wrong, reversal is not required on this front. *See Grotts*, 27 F.4th at 1279 (citing *Deborah M.*, 994 F.3d at 879 (7th Cir. 2021)).

Finally, Christopher claims that the ALJ erred by citing to normal mental status examinations at pain management visits in assessing his mental RFC. (R. 14, Pl.'s Br. at 14.) ALJs may consider consistently normal mental status examination findings in assessing a claimant's symptoms as one piece of evidence to weigh against the rest. *See Elizabeth A. D. v. Saul*, No. 19 CV 6024, 2021 WL 148831, at *13 (N.D. Ill. Jan. 15, 2021) (finding that "the ALJ appropriately focused on the inconsistencies between [the plaintiff's] allegedly disabling mental symptoms and evidence"); *see also Chambers*, 861 Fed. Appx. at 100-01 (considering mental status examinations in finding that the plaintiff's "mental impairments never deteriorated to the point of disabling her"). Here, the ALJ considered Christopher's mental status examinations amongst other pieces of evidence, such as: (1) progress notes indicating depression and anxiety; (2) prescriptions for Paxil, medical marijuana, Lyrica, Tizanidine, Morphine, and Ibuprofen; (3) reports of limited energy and motivation and "feelings of hopelessness and worthlessness;" (4) multiple denials of having thoughts of harming himself or others; and (5) the non-examining state agency consultants' report indicating that he may have problems with stress in a work environment. (A.R. 33.) The evidence of normal

10

mental status and mood during medical examinations on several occasions, coupled with evidence that Christopher's condition did not worsen to the point that it warranted more aggressive treatment, undercuts Christopher's claims that his mental health was debilitating. Accordingly, the ALJ's analysis was not erroneous.

**B.     Opinion Evidence**

Christopher argues that the ALJ erred in rejecting the non-examining state agency psychologist's opinion that his concentration was sufficient only in allowing him to complete one- or two-step tasks for 30 minutes at a time. (R. 14, Pl.'s Mem. at 15.) Christopher filed his claim after March 27, 2017, meaning that the ALJ no longer affords "specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Marc Y. v. Kijakazi*, No. 20 CV 7601, 2023 WL 2751120, at *7 (N.D. Ill. March 31, 2023) (citing 20 C.F.R. § 404.1520c(a)). Under this updated standard, the most important factors in evaluating any medical provider's opinion are "supportability" and "consistency." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); 20 C.F.R. § 404.1520c(a). Other factors for consideration include the provider-claimant relationship and the provider's specialization. 20 C.F.R. § 404.1520c(c). While ALJs must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," they are not required to explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ adequately explained why she rejected the state agency consultant's finding. Christopher testified and submitted records indicating that he can drive

11

for more than 30 minutes, and the ALJ explained that driving is an activity consisting of far more than two steps as it entails "follow[ing] the safety rules of the road, follow[ing] traffic signals and stop signs, maintain[ing] control of the car, navigat[ing] intersections safely, and us[ing] appropriate speed." (See A.R. 34.) Christopher asserts the ALJ erred by drawing this parallel because "[f]or purposes of Social Security disability determinations, the Dictionary of Occupational Titles defines simple one-or two-step instructions within the context of reasoning capabilities." (R. 14, Pl.'s Br. at 15.) Christopher argues that because driving a car is not an activity that involves "reasoning capabilities," the evidence cannot refute the state agency consultant's opinion that Christopher can perform only one- to two-steps tasks. (See id.)

But Christopher's argument infuses meaning into the state agency psychologist's analysis where it was not intended. The opinion very simply stated, "The claimant is capable of performing 1-2 step tasks and can concentrate sufficiently to complete these kinds of tasks." (A.R. 100.) The state agency psychologist did not cite to the Dictionary of Occupational Titles in referencing "tasks," nor did she define the term herself—a point the ALJ notes in her decision. (See id. at 34.) It was thus reasonable for the ALJ to read "1-2 step tasks" through a common-sense lens and find the state agency consultant's opinion inconsistent with the record evidence. Therefore, the court finds no error here.

12

**C.     RFC Assessment**

Christopher argues that the ALJ did not incorporate into the RFC several physical accommodations that he requires to sustain full-time employment. (R. 14, Pl.'s Br. at 8.)  The RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.R.F. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).  When assessing a claimant's RFC, the ALJ "must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate, reasons constituting good cause are shown for rejecting it."  *Chambers*, 861 Fed. Appx. at 101 (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).  The ALJ may not engage in "impermissible cherry-picking" by "highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).  Where the ALJ does not rely upon medical opinions, the ALJ must "thoroughly discuss[] the medical and other evidence carefully," "consider[] each of [the claimant's] impairments and related function deficits," and explicitly "describ[e] how the evidence supports each [RFC] conclusion."  *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011) (citing SSR 9608p); *see also Nina Joyce H. v. Saul*, No. 18 CV 4913, 2020 WL 212771, at *7 (N.D. Ill. Jan. 14, 2020).  An ALJ's RFC assessment will not be overturned where "[t]he ALJ thoroughly discussed the medical and other evidence and carefully considered each of [Plaintiff's] impairments and related function deficits" before assigning an RFC.  *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

13

Here, the ALJ concluded that Christopher can perform "sedentary work" with the following limitations:

> [n]ever climb ladders, ropes, or scaffolds and no more than occasionally climb ramps/stairs, balance, stoop, crouch, kneel, crawl, bend or twist; push/pull no more than frequently with upper and lower extremities; reach overhead no more than frequently with the right upper extremity; and use the hands no more than frequently to handle, finger and feel. He is to be provided a sit/stand option allowing him to stand 1-2 minutes after sitting for thirty minutes. Finally, the claimant can understand, remember, carry out and sustain no more than simple routine tasks, performing the same tasks day in and day out with no public contact and no more than occasional contact with coworkers and supervisors.

Christopher argues that the ALJ failed to account for several physical restrictions, ignored lines of evidence that would support further restrictions, and erred in finding that he only has a mild neurocognitive disorder.

At the outset, Christopher asserts that the ALJ failed to address his purported need to elevate his legs, difficulty using his hands, wrists, and fingers, restrictions on being in a seated position, and limited capacity to use his arms to push and pull. (R. 14, Pl.'s Br. at 8.) Contrary to Christopher's arguments, however, the ALJ tied the RFC to the record evidence, including: his testimony that he was able to sit while driving for 30 to 45 minutes, (A.R. 29); records suggesting that a feared nonunion of his radial styloid fragment—a break of the end of a radius bone—did not occur, indicating proper healing, (see id.; see also id. at 1146-51); documented relief from taking pain medications and muscle relaxers, receiving nerve blocks, and undergoing cervical spine injections, (id. at 31); Christopher's October 2019 reports that his pain had improved significantly, (id.); the CE's finding that Christopher had normal lumbar spine range of motion and negative straight

14

leg tests, (id. at 21; see also id. at 1236); and Christopher's self-reported daily activities, including vacuuming, shopping, driving, taking out the garbage, and lawn-mowing, (id. at 24, 31). The ALJ also noted the marked absence of medical records supporting some of Christopher's claims, *e.g.*, his need to elevate his legs, (id. at 29).

Christopher also complains that the ALJ ignored how his chronic pain would affect his performance in a workplace environment. (R. 14, Pl.'s Br. at 11.) But the ALJ referenced his complaints of pain at numerous points in explaining the RFC. Specifically, the ALJ limited Christopher to: sedentary work "[c]onsidering his continued pain complaints"; never climbing ladders, ropes, or scaffolds because "he could aggravate his right upper extremity/clavicle/shoulder pain," "cause pain/discomfort in his spine or neck," or "aggravate complaints of pain in his lower extremities"; occasionally climbing ramps and stairs, balancing, stooping, crouching, kneeling, crawling, bending, or twisting because "these postural movements can aggravate complaints of pain/discomfort in his lower extremities and spine"; and frequently pushing, pulling, and reaching overhead with the right arm "as greater activity can aggravate pain/discomfort in spine, neck, hands, arms, legs, and shoulders." (A.R. at 31-32.) Indeed, the ALJ imposed greater physical restrictions than those recommended by the CE. (See id. at 33.) If Christopher believed that additional restrictions were necessary, he should have offered medical opinions or additional evidence supporting the same. *See Gedatus*, 994 F.3d at 905.

15

Finally, Christopher complains that the ALJ's mental RFC ignores the neurocognitive disorder arising out of his injuries, does not account for his depression and anxiety, and ignores the effect his pain has on his mental abilities. (R. 14, Pl.'s Br. at 13-14.) The ALJ did not ignore the effect that Christopher's PTSD, anxiety, depression, and flashbacks had on his mental function. As discussed, the ALJ considered evidence indicating Christopher's depressed mood, anxiety, decreased motivation, feelings of hopelessness and worthlessness, lack of thoughts of hurting himself or others, unwillingness to attend counseling despite providers' recommendations that he do so, mental status examinations, one-year delay in seeking psychiatric or psychologic treatment, stability of condition, and the CE's findings, including that he had "a *mild* neurocognitive disorder," could perform serial 3s, had good short-term and low-average immediate memory, and demonstrated good abstract reasoning. (A.R. 32-33 (emphasis added).) Additional record evidence bolsters these findings, including that CEs found Plaintiff "capable of performing simple tasks" despite his difficulty handling stress. (Id. at 80.) Because Christopher fails to articulate what further accommodation would be needed and substantial evidence supports the ALJ's decision, remand is not warranted.

The court acknowledges that the ALJ did not explicitly state that Christopher's pain affects his mental RFC. However, in developing the mental RFC the ALJ relied on Christopher's pain management medical records, including mental status examinations recording normal findings. (Id. at 33.) But even if this

16

was not the case, any error would be harmless because the ALJ's mental RFC limited Christopher to "simple routine tasks, performing the same tasks day in and day out, with no public contact and no more than occasional contact with coworkers and supervisors," (id. at 34), which appears to be a nod to the CE's finding that Christopher's pain could reduce his capacity to interact with others, (id. at 1246). ALJs "need not rehash every detail each time [they] state[] conclusions on various subjects." *See Gedatus*, 994 F.3d at 903. Because the ALJ acknowledged and examined Christopher's pain in detail elsewhere in the opinion and imposed mental RFC limitations, it can be inferred that she considered pain when assessing his mental RFC. *See id.* (finding that where ALJ discussed activities to determine whether plaintiff had mental impairment, "he was aware of them when he considered [plaintiff's] physical symptoms"). Absent articulated grounds for a more restrictive RFC, remand is not warranted.

This court appreciates the severity of Christopher's workplace accident, the trauma he suffered, and the chronic pain he endures. But it was Christopher's burden to present sufficient medical evidence supporting his disability claim, and he failed to do so. *See Olsen v. Colvin*, Fed. Appx. 868, 875 (7th Cir. 2014). Even though reasonable minds may differ on whether the ALJ's outcome is appropriate, the ALJ supported her RFC assessment with a detailed review of Christopher's medical history, grounded in the medical record and inconsistencies within the same, and adequately explained how that evidence resulted in the range of work assigned. As such, a remand is not warranted.

17

## Conclusion

For the foregoing reasons, Christopher's motion for summary judgment is denied and the government's is granted.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**